The State v. Miller.

THE STATE v. MILLER, *Appellant.*

1. **Practice:** EVIDENCE: OBJECTIONS: EXCEPTIONS. Where no objections are made to the admission or rejection of testimony, nor exceptions saved to the court's action upon the same, at the time, the point will not be reviewed upon appeal.

2. **Practice, Criminal:** VENUE. The venue in this case held to have been sufficiently proved.

3. ——: ASSAULT WITH INTENT TO KILL: INSTRUCTION. An instruction defining an assault with intent to kill, under Revised Statutes, section 1262, which sets forth all the facts necessary to constitute the offence as defined by the statute, is sufficient, notwithstanding it fails to declare that the act must have been done feloniously.

4. ——: OFFENCE UNDER STATUTE: INSTRUCTION. An instruction defining an offence created by statute is sufficiently correct if it defines it as it is done in the statute.

5. ——: REPUTATION: INSTRUCTION. An instruction which declares to the jury that, in determining the credibility of a witness, they may consider his reputation for morality, will not constitute reversible error, because of the omission of the word *general*, where all the impeaching testimony has been directed to the general reputation of the witness, and the court, in the examination of the impeaching witnesses, explained to them that the inquiry was as to the general reputation of the witness.

6. ——: DEFENDANT AS WITNESS: INSTRUCTION. It is proper to instruct the jury that, in determining the credit to be given the defendant as a witness, they may take into consideration the fact that he is the defendant testifying in his own behalf.

*Appeal from Jackson Criminal Court.*— HON. HENRY P. WHITE, Judge.

AFFIRMED.

*Sherry & Hughes* and *W. M. Burris* for appellant.

(1) What Agnes Wartz said at the grocery-store and saloon, an hour before the difficulty, was incompe-

tent. It was not a part of the *res gestae.* (2) The attempts of the prosecuting attorney to impeach the witness, Russell, by asking him concerning his arrest about some affair with the girl, and the people rocking him out of that part of the town, were improper and should not have been allowed. (3) The court erred in excluding the testimony of the witness, Grove, as to what Agnes Wartz said immediately preceding the difficulty. It was a part of the *res gestae.* (4) It was highly improper for the prosecuting attorney to ask the witness, Russell, what sort of a house the defendant kept. (5) Defendant's attorney should have been allowed to cross-examine Agnes Wartz as to how she knew the difficulty occurred in Missouri. (6) The first instruction is defective in omitting to state that the cutting must have been done feloniously. *Hart v. State,* 57 Ind. 102; *Hunter v. State,* 101 Ind. 241; *Bird v. State,* 8 N. E. Rep. 14. An offence which is made a felony by statute must be charged to have been committed feloniously, whether it were felony at common law or not. *State v. Jane,* 3 Mo. 61; *State v. Murdock,* 9 Mo. 739; *State v. Davis,* 29 Mo. 391; *State v. Deffenbacher,* 51 Mo. 26. (7) The court erred in giving the fourth instruction. *State v. Sanders,* 76 Mo. 35. (8) The third instruction is erroneous in telling the jury to take into consideration "the reputation of the witness for morality." Only evidence of general character is admissible.

*B. G. Boone,* Attorney General, for the state.

(1) The indictment was drawn under Revised Statutes, section 1262, and is in the usual form. (2) No objections were made, or exceptions saved, to the admission or rejection of any evidence to justify a reversal, and the testimony will not be reviewed by this court. *State v. McDonald,* 85 Mo. 539; *State v. Hicks,*

92 Mo. 431. The instructions correctly put the case before the jury.

, RAY, J.—Defendant was indicted in the criminal court of Jackson county, Missouri, at the May term, 1886, for an assault with intent to kill one Agnes Wartz. No point is made upon the indictment, which is in the usual and due form and need not be further noticed. Upon the trial of the cause, the jury returned a verdict that they found defendant guilty as charged in the indictment, but that they could not agree as to the punishment, whereupon the court fixed the same at imprisonment in the penitentiary for a period of ten years. An extended and detailed statement of the facts and circumstances, as they appear in the record, will not be required. Defendant, who is a colored woman, and said Agnes Wartz, who is a German woman, resided, at the time of the difficulty, on adjoining premises on State Line Street, in Kansas City, Missouri, and not far from the line dividing the states of Missouri and Kansas. There had been ill feelings between them for some time, growing out of causes unnecessary now to notice, and on the evening of May 28, 1886, Agnes Wartz, the prosecuting witness, went over to a grocery-store across the line, in Kansas City, Kansas, for the purpose, as she testifies, of laying in supplies for breakfast next morning, and, as further appears, also for the purpose of having defendant arrested, upon charge of exposing her person and using vile and obscene language. A police officer, in Kansas City, Kansas, of whom she inquired about the arrest of defendant, told her to go back and get a Missouri policeman. She then started back, with a paper of eggs, which she had bought, and on her way home she met defendant, who assaulted her, cutting her severely one or more times with a razor or knife.

There is, perhaps, some conflict in the evidence as to the exact locality of the fight, and whether the same

was in Missouri, or on, or just over, the line in Kansas; but, taken altogether, the evidence is pretty satisfactory that it was in this state. And further, under the instructions of the court, the jury were required to find that the assault was made at Jackson county, in the state of Missouri. Some points are made, in this court, as to the admission and exclusion of evidence at the trial. Remarks made by Agnes Wartz at the grocery-store, and testified to by her, and also by Joseph Meyers and Michael Sullivan, and not specifically or otherwise designated, were, it is claimed, no part of the *res gestae*, and incompetent. Again, the witness Russell, testifying in defendant's behalf, was interrogated by the prosecuting attorney concerning his arrest about some affair with a girl, and whether the people in that part of town did not want to rock him out of it. Again, error is claimed in the examination of witness Todhunter as to the reputation of witness Russell for morality, truth, and veracity; and, also, that the witness George Groves commenced to state what Agnes Wartz said immediately preceding the difficulty, and that her declarations then made were part of the *res gestae*, and improperly excluded.

And again it is said, that, although the court, of its own motion, interposed an objection, and refused to allow an examination as to what kind of a house defendant was keeping, the witness Russell was afterwards, during the course of his examination, interrogated about the girls stopping at defendant's house, and whether families in the neighborhood did not beg witness not to permit defendant to keep that house, etc. But counsel do not claim, in their brief, that they interposed any objections at the time in any of these instances, or that any exceptions were taken; and an examination of the record, which we have made, shows that, in none of these specified instances, was any objection made, or exceptions saved. As to such matters,

therefore, there is nothing presented by the record calling for review. *State v. Burnett*, 81 Mo. 119 ; R. S., sec. 1921 ; *State v. McDonald*, 85 Mo. 539 ; *State v. Brooks*, 92 Mo. 542.

As already said, there was some controversy as to whether the assault and fight occurred in Missouri or Kansas, and claim is here made that the trial court erred in not permitting defendant's attorney to cross-examine Agnes Wartz as to how she knew it occurred in Missouri. Defendant further claims that this was especially erroneous and prejudicial, because she was the only witness testifying as to where it occurred. As to the latter statement, defendant's counsel labored under misapprehension. For example, the following occurs in the testimony of the witness Meyers : Q. "Do you know where the state line is ?" A. "Yes, sir." Q. "Where is it ?" A. "In the center of the [railroad] track." Q. "The German woman was on which side ?" A. "On the Missouri side." Q. "Was she there when this woman cut her ?" A. "Yes, sir." * *

* Q. "Did this cutting take place in Jackson county, Missouri ?" A. "I can't tell you, it was on the Missouri side of the track, but I don't know whether it was in Jackson county or not." Again, the evidence of officer Sullivan is to the effect that the fight occurred on the railroad track, which, at that point, he says, is on the Missouri side of the line, and that he telephoned for the Missouri policeman. There is other testimony in the record bearing upon the question, but this, we think, will suffice in this connection.

The claim that the court refused to permit defendant's attorney to cross-examine Agnes Wartz, the prosecuting witness, as to her knowledge of the locality of the difficulty, is on the refusal of the court to compel the witness to answer the question whether it happened on the side of the track on which the sun rises or sets. The witness, we may observe, was the first one put on

the stand by the state. She was not able to speak English intelligibly or satisfactorily, and was testifying through the interpreter. Previous to the refusal of the court to require an answer to said question, the witness had stated, upon examination by the court, and after direction to the interpreter to give her the German word for east, that she was unable to distinguish as to these terms east and west, and the court being satisfied that further examination on this point was a waste of time, stopped the examination as to that matter, and we see no abuse of its discretion in that behalf.

It only remains to notice exceptions taken to the court's action in the matter of instructions, all of which were given by the court, of its own motion, none being asked either by the prosecuting officer, nor by the counsel for defendant. The first is criticised as defective, in that there was an omission to state that the cutting must have been done *feloniously*. The instruction defines the offence as follows: "To constitute the offence charged you must find and believe that the defendant, intending to kill witness, Agnes Wartz, assaulted her, the said Agnes Wartz, with a razor or knife, the same being a deadly weapon, and you must also find that such assault was made with the intention, on the part of the defendant, on purpose, and of malice aforethought, to kill the said witness, Agnes Wartz." The instruction further correctly defines the technical expressions, "on purpose," "malice," "aforethought," and "malice aforethought."

This, we think, is all that is necessary in this sort of a case, as it contains all the essentials required by section 1262, Revised Statutes, 1879, on which the indictment is drawn, and which provides that: "Every person who shall, on purpose, and of malice aforethought, shoot at or stab another, or assault, or beat another, with a deadly weapon, or by any other means or force, likely to produce death, or great bodily harm, with

intent to kill, maim, * * * shall be punished by imprisonment in the penitentiary not exceeding ten years." *State v. Pullens*, 81 Mo. 387; *State v. Burr*, 81 Mo. 108; *State v. Anderson*, 81 Mo. 78; *State v. Madden*, 81 Mo. 421. If the doctrine of these cases is correct as to indictments, it should be equally applicable to instructions, which, perhaps, need not be so technically precise and accurate as indictments are required to be; at all events, instructions, in such cases, are sufficiently correct which set forth all the facts necessary to constitute the offence, as defined in the statute. In the case of the *State v. Pullens*, 81 Mo. 387, the defendant was indicted and convicted of the crime of forgery. The trial court instructed the jury that if the defendant falsely made and forged the note in question, with intent to injure and defraud, etc., they should convict. It was contended that the jury should have been instructed that they must find that the defendant falsely, *fraudulently*, and *feloniously* made and forged the instrument, but this court there said: "In a case like this, the instruction need not follow the language of the indictment. If the defendant falsely made and forged the note, with intent to injure and defraud, he was guilty as charged in the indictment."

The second instruction contains a full and correct exposition of the doctrine of self-defence, and is not criticised or complained of. The third is as follows:

"3. You are sole judges as to the credibility of witnesses and the weight of testimony. In determining the credit you will give a witness, and the weight you will attach to a witness' testimony, you will take into (account) the conduct and appearance of the witness upon the stand, the probability of the narration, the motives actuating the witness, the opportunities of the witness to observe and to be informed as to the matter respecting which testimony is given, the reputation of the witness for morality, and the inclination of the wit-

ness to speak truthfully, or otherwise, as to the matter
within his or her knowledge. All these matters being
taken into account and carefully considered by you, it
is your province to give to each witness such credit, and
to the testimony of each witness such weight, as you
deem proper. And if you shall conclude that any wit-
ness has sworn wilfully falsely as to any material matter
involved in the trial, you may, if you see fit, reject, or
treat as untrue, the whole or any part of such witness'
testimony."

It will be observed that the word, "*general*," is
omitted from the expression authorizing the jury to
consider, in this behalf, "the reputation of the witness
for morality." Under the rulings, in this state, a
witness may be impeached, not only by a general rep-
utation, as to veracity, but the inquiry may extend to
the general moral character or reputation of the witness."
*State v. Grant*, 79 Mo. 113, and cases cited. The rule
thus being to limit the inquiry to the general reputation
or character, the question is, what effect is to be given,
in this case, to the omission of the word, "general,"
from said instruction.

At the trial, impeaching testimony, addressed to
the *general* reputation of Russell, testifying in defend-
ant's behalf, for morality was introduced in rebuttal, by
the state. In this behalf three witnesses were exam-
ined, viz., R. M. Todhunter, Joseph Meyers, and Mar-
garet Dobson, and a brief consideration of their
testimony, in this respect, seems necessary and proper.
Todhunter is asked the usual question whether he knows
the general reputation of Russell in the neighborhood
where he lives, for truth and veracity, and answers that
he does not know whether he does or not. The court
thereupon says that "the reputation is what people
who know him say of him generally. Now if you know
what the opinions of his associates or acquaintances
generally are, you know his reputation. Not what you

The State v. Miller.

know of him personally, but what you know of what others say." Q. "Do you know his reputation generally, among those who are acquainted with him for truth and veracity and morality?" A. "No, sir, I am not acquainted with it." Mr. Woodson (the prosecuting attorney): "Do you know his general reputation for morality?" A. "I don't think they look upon it as being very good." Q. "Do you know his reputation?" A. "Not to my own knowledge." Q. "Do you know what people think of him?" A. "Yes, sir." Q. "Is it good or bad?" A. "I should call it bad." It is obvious that much of the evidence of this witness, especially the first part of it, does not meet the requirement of the rule as to impeaching testimony, and upon objection thereto, we must presume that the court would have excluded the same. But, as previously said, in this opinion, no objection was made to the admission of the evidence, and no exception was saved in that behalf, and this evidence is not properly for review in this court.

Margaret Dobson is asked if she knows the *general* reputation of Russell in the community where he lives and answers as follows: "Well, from what I hear they (them) say they give him a bad reputation." Her testimony was not objected to, and is, we think, competent; whilst that of Meyers fully conforms to the requirements of the above rule, and is as follows: Q. "Do you know the general reputation of this man Russell, down in that community, among the people who know him, for morality?" A. "Yes, sir." Q. "Is it good or bad?" A. "Bad." No witnesses were called by defendant, upon the question of the general reputation of Russell, for morality, or truth and veracity. The question, then, is about this, whether, where the impeaching testimony, as shown by the record before us, and subject to review in this court, is competent, and addressed to the *general* reputation for morality, we must reverse the cause, upon the mere omission to employ the word

*general*, in an instruction otherwise correct, and in a series of instructions likewise correct, in all other respects? The instruction should be considered, we think, in the light of the evidence, which, as the same is before us, was all directed, as said, to the *general* reputation of the witness for morality, what his neighbors, associates, and acquaintances generally said of him, in the community where he lived. The court had explained to the witness, Todhunter, in the presence of the jury, as we have seen, that the inquiry was as to the *general* reputation of the witness, what was said about him *generally* in the community, and the term reputation, so used in said instruction, must, we think, have been understood by the jury to mean *general* reputation, and the mere omission of the word general, from said instruction, ought not to work, under the circumstances of this case, a reversal of the cause.

Some complaint is made of the fourth instruction, but the instruction is in due form, speaks for itself, and is as follows:

"4. You must take into account the testimony of the defendant and give it such weight, in connection with all the other facts and circumstances, as you deem proper. But in determining the credit you will give to the defendant as a witness, you may take into account the fact that she is the defendant testifying in her own behalf."

We find no error in the record demanding our interference, and, therefore, affirm the judgment. All concur.