State v. Schatt.

STATE OF MISSOURI, Respondent, v. SCHATT, Appellant.

St. Louis Court of Appeals, January 7, 1908.

1. PRACTICE: In Criminal Cases: Venue: Circumstantial Evidence. In the prosecution for a criminal offense the evidence must affirmatively show the offense to have been committed within the jurisdiction of the court and no presumption will be indulged to supply that jurisdictional fact; nevertheless the venue may be established like any other fact by circumstantial as well as by direct evidence.

2. ———: ———: ———. In the prosecution of a barber for performing labor on Sunday in the c'ty of St. Louis, where a number of witnesses stated that they lived in St. Louis and then spoke of seeing the defendant in the performance of such labor at his barber shop in the Union Station, and where through the trial the venue was taken for granted, this was sufficient to support a finding that the offense was committed in the city of St. Louis.

3. SUNDAY: Barbers: Sabbath Breaking. Where a barber conducts the business of barbering in his shop on Sunday in the same manner as on other days of the week, he is guilty of laboring on Sunday in violation of section 2240, Revised Statutes 1899.

4. ———: ———: Work of Necessity. There are exceptional circumstances under which a barber may be called upon to pursue

his craft such that it would be a work of necessity within the provisions of section 2240, Revised Statutes 1899, and in such cases it would ordinarily be a question for the jury as to whether the act was one of necessity.

5. ———: ———: ———: **Jury Question and Court Question.** Whether a particular work on Sunday is one of necessity or not is a question of law or fact according to circumstances.

*First,* if it is clear that the particular act is one of necessity, such that no two reasonable minds would differ about it, the court will determine it as a matter of law.

*Second,* if the question whether the work is one of necessity is a question about which reasonable minds might well differ, it is a question of fact to be submitted to the jury.

*Third,* if the facts are such as to show the work is not one of necessity so that reasonable minds would not differ upon the proposition, it is a question of law for the court.

6. ———: ———: ———: **Burden of Proof.** Where, in the prosecution of a defendant for pursuing his occupation of barber in violation of the Sunday law, the State made out a prima-facie case by showing that he was shaving a customer in the usual course of business, the burden was on the defendant to show the circumstances which made the act a work of necessity.

7. ———: ———: ———: ———: **Evidence.** After the State had made out a prima-facie case in such case, evidence on the part of the defendant that the barber shop was at a union station where several hundred passengers were discharged daily en route to distant points and had not had an opportunity to shave for several days and that heavy beards were a source of great discomfort, was not sufficient to prove the work to be one of necessity and was properly excluded.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Hiram N. Moore* for appellant.

*Phillips W. Moss,* Prosecuting Attorney, *John D. Dalton* and *Clarence T. Case,* Associate Counsel, for State.

(1) The evidence for the State was sufficient to sustain the verdict of guilty. State v. Wellott, 54 Mo.

310; State v. Granneman, 132 Mo. 326; State v. Lipscomb, 52 Mo. 32; State v. Meek, 70 Mo. 355.    (2) The testimony offered by defendant as tending to show that the work and labor done by him on the Sunday in question was a work of necessity, was properly excluded.    State v. Frederick, 45 Ark. 347; State v. Stuckey, 98 Mo. App. 664; Commonwealth v. Waldman, 140 Pa. St. 89.    (3) The instruction given by the court was proper.    State v. Ohmer, 34 Mo. App. 115; Allen v. Duffree, 43 Mich. 1; Commonwealth v. Dextra, 143 Mass. 28.    (4) The venue in this case was sufficiently proven.    State v. Ruth, 14 Mo. App. 226; State v. Fitzporter, 16 Mo. App. 282; State v. Roach, 64 Mo. App. 431; State v. Burns, 48 Mo. 438; State v. Miller, 93 Mo. 263; State v. Sanders, 106 Mo. 195; State v. Hill, 96 Mo. 358; State v. Chamberlain, 89 Mo. 134; State v. McGinnis, 76 Mo. 234.

NORTONI, J.—1.    The defendant is a barber and proprietor of the Terminal Barber Shop situate in the Union Station at the City of St. Louis. He was tried and convicted on a charge of performing labor, that of a barber, on the Sabbath Day.    The first argument addressed to the court for a reversal of the judgment is that there is no evidence in the record showing the offense to have been committed in the city of St. Louis. In other words, it said there is a total failure of proof with respect to the venue of the offense.    The criminal law is penal and therefore the rules requiring precision in averment and strictness of procedure obtain in the full measure of their application.    The law is so jealous of our liberties and so solicitous in the matter of safeguarding the inalienable rights of the citizen that it enforces the influence of the principle referred to alike in each and every cause where penal provisions are invoked against the individual.    In furtherance of this principle, no intendments go in favor of the gov-

ernment and against the citizen. . Whatever presumptions of the law obtain at all-are in favor of the good conduct, laudable motives and correct action of the individual.    And so it is the law presumes one charged with an offense to be innocent and affixes the burden upon the government affirming his guilt, to establish it by competent proof, and that, too, beyond a reasonable doubt.    In consonance with these principles, the proposition is ascertained and certain that the evidence must affirmatively show the offense to have been committed within the jurisdiction of the court where the proceeding, on account of the infraction of the law, originated, otherwise the prosecution will fail.    This is true for the reason neither intendment nor presumption of law will go in aid of and to supply this jurisdictional fact.  [Gordon v. State, 4 Mo. 375; State v. Burns, 48 Mo. 438.] However, the law is reasonable and just with respect to this, as it is in all other matters, and therefore the courts have determined that inasmuch as the question of venue or jurisdiction over an offense is one of fact, it may be established -like any other fact in the case, as well by circumstances or legitimate inferences from other or collateral facts in proof as by direct-and positive evidence.    [State v. Burns, 48 Mo. 438; State v. Sanders, 106 Mo. 188, 17 S. W. 223; State v. Hill, 96 Mo. 357, 10 S. W. 28; State v. McGinnis, 76 Mo. 326; State v. Chamberlain, 89 Mo. 129; State v. Miller, 93 Mo. 263, 6 S. W. 57; State v. Ruth, 14 Mo. App. 226; State v. Fitzporter, 16 Mo. App. 282; State v. Roach, 64 Mo. App. 413.]

There is no direct proof that the offense was committed in the city of St. Louis.    This being true, it is important to ascertain whether or not there are other facts in proof from which it may be reasonably inferred that the offense was in fact committed within the jurisdiction of the court.    Now several witnesses stat-

128 App.—40

ed they resided in St. Louis and mentioned their places of business on well-known streets, etc. They spoke of the defendant's place of business as the Terminal Barber Shop in the Union Station and said they saw him barbering therein on Sunday, May 26, 1907. Witness Wade gave evidence to the effect that he is proprietor of Walhalla Hall, located at Tenth and Franklin avenue in the city of St. Louis; that he knew the defendant who owned the barber shop at Union Station; spoke as though he was familiar with the defendant's shop, and said: "I went up there" to get a shave. The witness, Girard, said he lived at 2318 Olive street, St. Louis, Missouri; is a barber by trade, employed at 310 North Jefferson avenue; that he knew the defendant and saw him laboring, shaving and massaging Wade, in his shop at Union Station at the time mentioned. The witness Clark said he worked at 24 South Tenth street and was present Sunday, May 26, 1907; saw the defendant employed as a barber, shaving and massaging the witness Wade, in defendant's shop at Union Station. Some of the witnesses said they entered the defendant's shop which was open for business as usual, from the midway in Union Station. This midway is well known to Missourians as being an important adjunct to the Union Station in St. Louis. Several of the witnesses, after saying they resided in St. Louis, spoke of the defendant's shop at the Union Station, as though it were near by, or at least not outside of the city. In truth, although no witness said in so many words that either the defendant's shop or the Union Station is located in St. Louis, nevertheless no candid mind can follow the proof without being impressed by numerous circumstances and inferences from other established facts in the case, that the offense was committed in St. Louis. These inferences, each and all, point to but one barber shop in but one Union Station, and that is at St. Louis. Such a conclusion seems irresistible from reading the testi-

mony, and in these circumstances, we are quite clear the reasonable inferences arising from the testimony were sufficient for reference to the jury, especially in view of the fact that the case proceeded in the trial court as though the matter were taken for granted. The question was referred to the jury by the trial court in an instruction as follows: "You are therefore instructed that if you believe and find from the evidence that Frank. J. Schatt, the defendant, in a barber shop at Union Station in the city of St. Louis, and State of Missouri, did," etc. The jury found the issues affirming the offense to have been committed within the city. The inferences from facts in proof constitute substantial evidence tending to support this finding. If there be substantial evidence although it consists entirely of inferences from other facts in proof, it will be sufficient to support the finding under the instruction of the court in cases such as this, where the matter is not the subject of special controversy. [State v. Sanders, 106 Mo. 188; State v. Chamberlain, 89 Mo. 129; State v. Burns, 48 Mo. 438; State v. Miller, 93 Mo. 263.] In view of the fact that there is no direct proof on the question, it may not be improper to point out the trend of judicial opinion given in like circumstances, in the State.

In State v. Burns, 48 Mo. 438, there was no direct proof that the offense was committed in St. Louis county; nevertheless the conviction, which was for murder in the first degree, was sustained by our Supreme Court. The witnesses all spoke of the murder as having taken place on Mullanphy street, but it was not stated the street was in St. Louis county. It appears, however, that the case proceeded in the trial court as though the fact of the crime having been committed in St. Louis county, if committed at all, was practically conceded. In the opinion, it is said the indictment charged and the court required the jury to find the crime was committed in St. Louis county. There was no special controversy

over the matter in the trial of the cause and a diagram was exhibited showing the location of the house and how situated. It was determined in this state of the case the judgment should not be disturbed, especially if the inferences raised a violent presumption in support of the verdict. It is certain that the inferences arising in the case now in judgment tending to point St. Louis as the venue of the offense, are more potent to that end than those appearing in the opinion last above cited, given by our Supreme Court.

In State v. Ruth, 14 Mo. App. 282, the offense charged was the larceny of a coat in the city of St. Louis. The evidence mentioned No. 1203 Washington avenue, without designating any particular city or county. On the trial it was "rather taken for granted" that if the offense was committed at all, it transpired in the city of St. Louis. The court recited that the witnesses mentioned several well-known streets in the city of St. Louis and laid stress in the opinion upon the fact that the venue of the offense was "rather taken for granted" in the trial court, and said there could be no doubt in the minds of the triers of the fact and the judges of the appellate court that the streets spoken of were in the city of St. Louis. The State v. Burns, supra, was cited and relied upon as supporting the adjudication.

In State v. Fitzporter, 16 Mo. App. 282, the indictment charged the offense to have been committed in the city of St. Louis. The witnesses said nothing expressly tending to prove the offense was committed in that city. They mentioned defendant's office at Seventh and Spruce streets, however, as the place of the offense. The trial court omitted in its instruction to require the jury to make any finding as to the venue. This court adjudged that inasmuch as numerous inferences arose from other facts in proof so that both the court and jury must have understood the city of St. Louis to have been the venue of the offense, the judgment should be affirmed. It ap-

pearing the jury were not required by the instructions to make a finding on the question, we cannot refrain from commenting that the case last cited no doubt marks the very extreme of conservative adjudication on the subject. This must be true when we recall; first, that the venue is an issuable fact in the case denied and put at issue by defendant's plea of not guilty; and second, that all matters of fact are for the jury. Now there being no direct proof in that case, it seems the verdict could be supported only by inference from other facts, and whether these inferences were sufficient to establish that proposition of fact to the satisfaction of the jury, the jury were not even required to affirm or deny.

In State v. Roach, 64 Mo. App. 413, the information charged the offense to have been committed in St. Louis. No witness testified to that fact. The witnesses, however, spoke of O'Fallon and Hogan streets, and the corner of Division and Eighteenth streets, etc. The crime was shown to have been committed at Eighteenth and Division streets. It was seemingly or tacitly conceded that those streets were in the city of St. Louis; at least there was no controversy about the matter on the trial. This court said it would take judicial notice that there are such streets in St. Louis. The defendant was spoken of as a member of the police force of the city of St. Louis. The court adjudged that these facts brought the case within the rule announced in State v. Burns, supra, by raising a violent presumption that the offense was committed as charged, and the judgment was affirmed.

Now in the case at bar, identically as in the cases cited, the trial proceeded as though it was taken for granted the defendant's barber shop, where he performed the labor, was in Union Station in St. Louis. Aside from the fact being at issue by the plea of not guilty, there was no controversy about the matter whatever. In these circumstances when considered in connection with the many inferences of fact above referred to and the

jury's affirmative verdict under express instruction, the assignment should be overruled. The authorities are in point and conclusive.

2.   The statute is as follows:

"Every person who shall either labor himself, or compel or permit his apprentice or servant, or any other person under his charge or control, to labor or perform any work other than the household offices of daily necessity, or other works of necessity or charity, or who shall be guilty of hunting game or shooting on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding fifty dollars." [R. S. 1899, sec. 2240.]

It will be noticed this section does not, in express terms at least, deal with the matter of keeping open shop or exposing goods or wares for sale on the Sabbath day.   The offense denounced in so far as this case is concerned, is that of performing labor or work on the Sabbath day other than the household offices of daily necessity or other works of necessity or charity.   The precise violation of which defendant was convicted is substantially that of performing labor on the Sabbath day by shaving and massaging the face of Frank Wade, and performing the labor of a barber on divers and sundry other persons unknown, such labors not being the household offices of daily necessity nor other works of necessity or charity.   The facts given in evidence on behalf of the State tend to prove the charge as laid and except as hereinafter stated, they were not controverted by the defendant.   The court instructed, among other things for the State, substantially that if the jury believed from the evidence the defendant, in a barber shop at Union Station, in St. Louis, Missouri, on May 26, 1907, the same being the first day of the week commonly called Sunday, performed the labor and services of a barber in the usual course of business as on other days of the week, by shaving and massaging the face of Wade, they

should find him guilty; otherwise they should acquit.
It will be observed that there is involved in this charge
the proposition that as a matter of law on the facts of
this case, the act of performing the labor and hand-
craft of a barber on the Sabbath day in the usual man-
ner, that is, as on a secular day, impinges the statute
above set out and renders the person performing such
labor amendable to its penalties.   The defendant's coun-
sel excepted at the time and now argues here that the
charge as given by the court is insufficient and incom-
plete in itself inasmuch as the question of necessity
vouchsafed as proper matter of defense in the exception
of the statute was not referred to or treated with therein.
In other words, it is insisted that the court erred in in-
structing the jury in effect that the handcraft or labor
of a barber is a labor other than a work of necessity,
within the purview of the statute.   We are not per-
suaded that the instruction, when considered with ref-
erence to the facts upon which it predicates, was error.
Now there is no doubt that there may be situations pre-
sented where the proposition of law involved in the in-
struction mentioned, would not be pertinent.   Not so,
however, in cases such as this, where the record is de-
void of a single fact tending to establish the labor men-
tioned was a labor of necessity.   Indeed, there can be
no controversy over the proposition that barbering in
one's shop in the usual manner, is laboring, and if done
on the Sabbath, it is within the purview of the Sunday
statute cited.   So much has been frequently adjudged
by the courts on either side of the Atlantic, and is the
established rule of decision in Missouri and elsewhere,
as appears from the following authorities.   [State v.
Granneman, 132 Mo. 326, 33 S. W. 784; State v. Wel-
lott, 54 Mo. App. 310; State v. Frederick, 45 Ark. 347;
Commonwealth v. Dextra, 143 Mass. 28; Commonwealth
v. Waldman, 140 Pa. St. 89; Phillips v. Innes, 4 Clark
& Finnelly's Reps. (H. L.) 234; Ringgold, Law of Sun-

State v. Schatt.

day, 235-245; 27 Amer. & Eng. Ency. Law (2 Ed.), 394, 395; Ex Parte Kennedy (Tex.), 58 S. W. 129.]

It is argued, however, notwithstanding the doctrine of the authorities last cited, that while barbering may be labor, and as such, come within the statute as a matter of law; nevertheless under certain circumstances the question as to whether it is a labor of necessity and therefore within the exception to the statute, is a question of fact and as such, within the province of the jury for determination. Now it is true the question of necessity contemplated in the statute as sufficient to remove a given case from its penal provisions, is a relative question, on which no hard and fast rule can be ascertained to comport with the ends of precise justice in all cases that may arise. This is certainly true when we consider the various phases of the question that may arise in the vicissitudes of human endeavor. In this view of the matter, it must be conceded that circumstances may arise where the labor of a barber on the Sabbath might be regarded as a work of necessity, or at least as falling within the principle of brotherly love or charity. For instance, if the barber were called upon to shave one deceased, preparatory to burial, or to shave a sick man whose beard was a source of extreme discomfort, or to remove the hair from the head of one suddenly injured. There may be other instances as well. [Ex parte Kennedy (Tex.), 58 S. W. 129.] It certainly could not be said in cases of the nature suggested, that the act of performing the craft of a barber would be laboring, such as would subject the barber to the penalty as a matter of law, without reference to the exceptions in favor of necessity or charity. Indeed, in the event of a prosecution in such circumstances, where the court refused to direct a verdict of acquittal as a matter of law on the grounds that the labor was one of necessity, the barber would of right be entitled to have the matter referred to the jury as one of fact. In this connection it is

proper to say here that there are respectable authorities on either side of this question. It is true so eminent an authority as Judge COOLEY, in Allen v. Duffie, 43 Mich. 1, when treating of a civil contract, that of a church subscription made on Sunday which was sought to be enforced on the ground that it came within the exceptions of necessity or charity, said that the question of necessity or charity was purely one of law and that it could not be left to depend upon the opinions of jurors, for to do so would result in no settled rule whatever on the subject, as in one case one thing might be determined to come within the exceptions of necessity or charity and in another case, something entirely different might be regarded as coming within those exceptions. However this may be, the weight of authority sustains the proposition that the question of whether or not the particular act of labor performed under the circumstances of the case, is a work of necessity or charity, is one of fact instead of law, and therefore properly referable to the jury. [27 Amer. and Eng. Ency. Law (2 Ed), 400; Ungericht v. State, 119 Ind. 379; 21 N. E. 1082; Egerton v. State, 67 Ind. 588; Peg v. Cleworth, 4 B. & S. 927; Hooper v. Edwards, 18 Ala. 284; Burnes v. Moore, 76 Ala. 399; 52 Amer. St. Rep. 332; Sayer v. Wheeler, 32 Iowa, 559; Com. v. Gillespie, 146 Pa. St. 546; State v. Knight, 29 W. Va. 340; State v. McBee, 52 W. Va. 257.] Ringgold seems to entertain the same opinion. He says the terms "necessity" and "charity" employed in the Sunday statutes are so vague and indefinite as to render it impossible to apply them with anything like uniformity to everyday life, and expresses the opinion that were they parcel of any other statute than those pertaining to the Sabbath, the courts would declare the entire law void for uncertainty. [Ringgold, Law of Sunday, p. 193; see also, State v. Stuckey, 98 Mo. App. 664, 73 S. W. 735.]

Thus we see the trend of the authorities pro and

con on the subject. It is after all a matter to be determined on principle, and when viewed from this standpoint, should be treated, of course, precisely as all other matters of the same nature. Now on principle, the question essentially resolves itself to this. First, if the proposition be clear that the particular act of labor performed is one of necessity; that is to say, if the labor is so clearly a work of necessity that no two reasonable minds would differ thereabout; the court may treat it as a matter of law, identically as in other cases, and under such circumstances, no doubt would be justified in so declaring. Second, on the other hand, if the question is one about which reasonable minds might well differ, it is then essentially one of fact, and as such, within the province of the jury. And third, if the proof is so clear that no two reasonable minds could differ on the proposition, that no possible element of necessity whatever entered into the particular act of labor performed, then the court may, as a matter of law, treat the case as falling within the penalties, and not within the exception to the statute as one of necessity or charity. We are fully persuaded that the propositions stated are sustained by the Supreme Court in State v. Granneman, 132 Mo. 326-331. [See also State v. Frederick, 45 Ark. 347.] In the Arkansas case last cited, the court there held that the labor of a barber in shaving his customers, is so clearly a worldly labor or work, as to render it entirely unnecessary for the indictment to negative the act as one of either necessity or charity. In State v. Granneman, supra, our Supreme Court cited the Arkansas case to the proposition that it was a question about which reasonable minds could not differ, and therefore essentially a question of law when nothing more appeared than that the barber prosecuted his calling on a Sabbath day, as in the case at bar. See also State v. Wellott, 54 Mo. App. 310, which bears the same construction, to say the least.

Now on the facts of the case as well as those sought to be introduced by defendant and excluded by the court, nothing appears tending to show the barbering of the witness Wade was an act of necessity. So far as Wade was concerned, he frankly said he shaved only three times a week and massaged quite infrequently; that he had much leisure and could have gotten shaved and massaged "most any time." In truth, the facts tended to prove the defendant performed the labor as a barber on the Sabbath day and received the usual compensation therefor as barbers do on secular days and merely as a matter of business, in so far as he was concerned. It was no doubt a matter of convenience so far as Wade was concerned. However that may be, the fact that the convenience of either party is served in the act of labor, partakes of neither necessity nor charity. [27 Amer. and Eng. Ency. Law (2 Ed.), 399; Burnes v. Moore, 76 Ala. 339; Com. v. Sampson, 97 Mass. 407; McGrath v. Merwin, 112 Mass. 467; Bucher v. Fitchburg, etc., R. Co., 131 Mass. 156; Allen v. Duffie, 43 Mich. 1; State v. Stuckey, 98 Mo. App. 664; Ex Parte Kennedy, 42 Tex. Crim. 148.] The assignment of error with respect to the instruction mentioned, will be overruled.

The law is well settled to the effect that when the subject-matter of the negative proposition lies peculiarly within the knowledge of the defendant and full proof is made on other material allegations, the negative proposition will be regarded as established unless disproved by the party possessed of such peculiar knowledge. [State v. Lipscomb, 52 Mo. 32; State v. O'Brien, 74 Mo. 549; State v. Meek, 70 Mo: 355.] In view of the principle last mentioned, the State made a prima-facie case upon establishing the facts above set out and the burden was thereby devolved upon the defendant to show the labor performed was of the character contemplated in the statute as one of necessity or charity. [State v.

Wellott, 54 Mo. App. 310.] In order to remove the case within the exception of necessity, the defendant sought to introduce evidence tending to prove that his barber shop, located as it is in Union Station, was constantly patronized by a large number of the traveling public; that several hundred passenger trains discharged passengers daily at the station, many of whom enroute to and from most distant points, had not had an opportunity to shave for several days, and were therefore his patrons. He also sought to prove as an expert that a coarse and heavy beard is a source of great discomfort, which serves to irritate the face if not shaven frequently. The court was of the opinion these facts did not tend to establish the act of labor performed in shaving and massaging Wade was one of necessity and therefore excluded the proof. It is urged the court erred in excluding the evidence above referred to and in declining to submit the question of necessity arising thereon in instructions requested by defendant. These facts, of course, had no bearing on the act of shaving Wade and were properly excluded. Arguments are nevertheless advanced as to what is and what is not a labor of necessity, as contemplated in the statute. The question of what is and what is not a labor of necessity within the Sunday statutes has been often mooted and much discussed in the authorities. The definition seized upon by the courts and promulgated in standard works as most satisfactory, is that evolved in an early case in Massachusetts, the very home of the blue laws, to the effect that: "By the word 'necessity' in the exceptions, we are not to understand a physical and absolute necessity; but a moral fitness or propriety of the work and labor done, under the circumstances of any particular case, may well be deemed a necessity within the statute." [See Flagg v. Inhabitants of Millbury, 4 Cush. (Mass.) 243; Bennett v. Brooks, 9 Allen (Mass.) 118; Commonwealth v. Knox, 6 Mass. 76; Burnett v.

Western Union Tel. Co., 39 Mo. App. 599-613; Doyle v. Lynn, etc., Co., 118 Mass. 197; Duffie v. Allen, 43 Mich. 1; Johnson v. People, 31 Ill. 469; Morris v. State, 31 Ind. 189; State v. McBee, 52 W. Va. 257; Hendersdorf v. State, 25 Tex. App. 597; Ex parte Kennedy, 42 Tex. Crim. App. 148, 58 S. W. 129; McClardy v. Lowell, 44 Vt. 116; Burns v. Moore, 76 Ala. 339; 52 Amer. St. Rep. 332; see also 27 Amer. and Eng. Ency. Law (2 Ed.), 399.]

Now under this rule, the question is whether the act of laboring as a barber for compensation on the Sabbath day as a business, identically as on a secular day, is morally fit and morally proper when considered with reference to the Sunday laws and the great purpose sought to be achieved by the Legislature in providing them as rules of conduct. The very reading of our Constitution and laws discloses the one to have been ordained and the other provided by and for a God-fearing Christian people who regard the Sabbath as a holy day, set apart for the rest of man and brute and the worship of Almighty God. This is obvious from words and phrases employed and sentiments expressed therein manifesting the benign spirit and beautiful charity of Christianity. To the end that a due observance of this day shall be had, the arm of the civil power is interposed by means of the Sunday laws for the purpose of enforcing cessation of all labors other than those impelled by the necessities and the Christian motives of love, as manifested through charity. While the Sunday laws command a cessation from labors on that day, they do not interfere with the free exercise of conscience in respect of matters of religion. Every person may worship or not as he feels inclined after communion with his own soul. However, these laws reckon with the well-known fact that as a Christian people, the larger element of our citizenship conscientiously believe the Sabbath to be hallowed time which should be devoted

to rest and worship rather than to business pursuits. That these good people may enjoy the rights of conscience in the fullest measure and devote the day to repose and the worship of the Deity without being molested or chagrined by the noise and turmoil incident to the pursuits of active business, these penal provisions have been enacted. Such is the fundamental notion involved in the Sunday laws, as we understand it. [State v. Ambs, 20 Mo. 214.]

Now with this thought, fundamental of the entire proposition in mind, the act of a barber plying his usual avocation for compensation on the Sabbath day, merely for the accommodation or convenience of the traveling public, as mentioned in the offer of proof and instructions referred to, certainly cannot be regarded as an act of moral fitness or propriety. This is especially true when the act is considered with reference to the rights of conscience sought to be vouchsafed to those · Godfearing and Christian people who have laid the architrave, builded the superstructure, and now maintain the edifice of our higher civilization.

The case was well and carefully tried by the learned judge. All of the assignments of error are without merit. They should each be overruled and the judgment affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.