**STATE of Missouri, Plaintiff-Respondent,**

v.

**KATZ DRUG COMPANY, a Corporation, Defendant-Appellant.**

No. 48587.

Supreme Court of Missouri,

En Banc.

Dec. 11, 1961.

Rehearing Denied Jan. 8, 1962.

Corinne Richardson, St. Louis, John C. Noonan, Kansas City, Orville Richardson, St. Louis, for appellant; Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Hullverson, Richardson & Hullverson, St. Louis, of counsel.

Thomas F. Eagleton, Atty. Gen., George W. Draper, II, Asst. Atty. Gen., for respondent.

Arthur R. Tucker, Charles L. Edson, R. Timothy Hanlon, Samuel H. Liberman, St. Louis, amici curiae; Lewis, Rice, Tucker, Allen & Chubb, St. Louis, of counsel.

HYDE, Chief Justice.

Defendant was convicted of exposing to sale goods, wares and merchandise on Sunday in violation of Secs. 563.720 and 563.-730. (Statutory references are to RSMo and V.A.M.S. unless otherwise indicated.) We have jurisdiction because defendant contends these statutes are unconstitutional

on grounds involving the construction of the Constitution of the United States and the Constitution of Missouri.

These statutes are as follows:

"§ 563.720. Every person who shall expose to sale any goods, wares or merchandise, or shall keep open any ale or porter house, grocery or tipling shop, or shall sell or retail any fermented or distilled liquor on the first day of the week, commonly called Sunday, shall, on conviction, be adjudged guilty of a misdemeanor and fined not exceeding fifty dollars.

"§ 563.730. Section 563.720 shall not be construed to prevent the sale of any drugs or medicines, provisions or other articles of immediate necessity."

Defendant claims "neither the word 'provisions' nor the phrase 'articles of immediate necessity' fixes any ascertainable standard by which guilt may be determined and furnishes no adequate guide to future conduct or the adjudication of past action"; and that "they are vague and uncertain and, therefore, void in violation of common law rules and the due process clause of the 14th Amendment to the Constitution of the United States and Article 1 of section 10 of the Missouri Constitution, V.A.M.S., both of which require fair warning to be given to individuals of the criminal consequences of their conduct and an opportunity to have crimes charged against them tried under clear and definite rules of law disclosed to and applied by courts and juries."

Defendant also claims these statutes "violate the Missouri Constitution, Article 2, section 1, and Article 3, section 1, providing for a separation of the powers of the legislature and the judiciary and empowering only the legislature to enact or make law and establish standards of conduct," because they "fail to lay down any ascertainable rule of law by which courts and juries may determine whether or not an article falls within the classification of 'provisions' or 'articles of immediate necessity'"; so that "courts and juries are permitted by the legislature to make their own laws in this field."

Defendant further claims these statutes "permit one to be charged with crime under them, without any definition of the word 'provisions' or of the phrase 'articles of immediate necessity', in violation of Article 1, section 18(a) of the Missouri Constitution providing that in criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation."

■ The State's evidence showed that four members of the Meat Cutters Union met on Sunday morning, February 22, 1959, and decided to go to defendant's store at Eighth and Washington in the City of St. Louis to make purchases of articles they did not need. Personal motivations were stated to be because of religion, desire to go to church on Sunday and worry about being made to work on Sunday. Articles purchased were an electric frying pan, a card table, two decks of playing cards, and 20 ballpoint pens and refills. These purchases were made for the purpose of involving defendant in a violation of law. Defendant offered no evidence. It is to be noted that no contention is made on this appeal of conflict of these statutes with constitutional provisions for religious liberty, the issue recently decided by the United States Supreme Court in McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; Gallagher v. Crown Kosher Super Market of Massachusetts, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536; Two Guys From Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551; and Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563.

Long before these decisions, we said: "The Missouri Sunday laws have regard to that day as a day of rest, and not to the religious character of the day. They are civil, not religious, regulations, and are based upon a sound public policy which recognizes that rest one day in seven is for the general good of mankind. Hennington v. [State of] Georgia, 163 U.S. 299–304, 16

Sup.Ct. 1086, 41 L.Ed. 166. Those laws are sustained as civil, municipal, or police regulations, without reference to the fact that the day of rest is also the Christian's day of rest and worship." (State v. Chicago, B. & Q. R. Co., 239 Mo. 196, 143 S.W. 785, 786; see also ABC Liquidators, Inc. v. Kansas City, Mo.Sup., 322 S.W.2d 876, 880.) This principle is well illustrated by the present English Shops Act of 1950 (14 George VI 462) in which the provisions concerning Sunday trading (Part IV, p. 500) are included with comprehensive provisions concerning closing hours and conditions of employment during week days. It is also worthy of note that this Act contains a detailed schedule of "Transactions for the purposes of which a shop may be open in England and Wales for the serving of customers on Sunday." Perhaps our Legislature would not consider such detailed schedules advisable but it would seem to be time to modernize our Sunday statutes since they contain some terms applicable to conditions of 1825, when they appeared as part of our first published statutes (RS 1825, p. 311), rather to the present time. Certainly a revision now could give better treatment and better standards for modern conditions but that is a matter for the Legislature.

■ As to the claim of vagueness, we are not troubled by the term "provisions." Black's Law Dictionary defines it as "articles of food for human consumption." In 73 C.J.S. 268 its common usage is said to be "food and provender for men and beasts" including "meats and groceries," and that "a definition of the term as meaning food for mankind only is too narrow." (See also definitions in the second and third editions of Webster's New International Dictionary.) In the context in which it is used "drugs or medicines" and "other articles of immediate necessity," we think the broader definition is intended and so rule.

We have previously held in State v. Campbell, 206 Mo. 579, 105 S.W. 637, 639, that if, under these statutes, one had the

right to sell an article "it logically follows that he had the right to expose it for sale." Therefore, these statutes do not prevent stores selling "drugs or medicines, provisions or other articles of immediate necessity" from being kept open on Sunday for the purpose of selling them. The troublesome question is: What is meant by "other articles of immediate necessity"? This term has had a long history and is closely related to the term found in Sec. 563.690 prohibiting Sunday work and labor except "the household offices of daily necessity, or other works of necessity or charity." This term "works of necessity or charity" originated in the basic English Sunday Statute, 29 Charles II, c. 7, which "found its way in American colonial laws and has descended into all their successors currently in force." (See separate opinion of Mr. Justice Frankfurter in the McGowan case, 81 S.Ct. 1. c. 1189; see also Appendix II therein showing Sunday laws of all states in tabular form, 81 S.Ct. 1. c. 1202–1217.) More than half the states have this "works of necessity" provision and there are many decisions construing it. (See 50 Am.Jur. 814, Sundays and Holidays, Secs. 16–18; 83 C.J.S. Sunday § 11, p. 812, §§ 13–18, p. 816 et seq.; Annotations 47 A.L.R. 1106, 60 A. L.R. 763, 24 A.L.R.2d 825; Sunday Laws, Ringgold, Chap. X, II; Harris on Sunday Laws, Chap. III, secs. 97–119.) The "other articles of immediate necessity" exception for sales seems to have been adopted only in Kansas and Missouri, with somewhat similar but differently worded exceptions for sales in New Hampshire and Oklahoma (N. H. Sec. 578(4); Okla. T21, Sec. 908; see table commencing 81 S.Ct. 1202.) The issue of vagueness of such terms as "necessity" has been considered in several cases, the most recent being the McGowan case (81 S. Ct. 1. c. 1106) where an exemption to Sunday sales was "merchandise essential to, or customarily sold at, or incidental to, the operation of" bathing beaches, amusement parks and other designated establishments in the area involved. The Supreme Court said "that business people of ordinary intel-

ligence" would know or be able to find by reasonable investigation what exemptions are encompassed by the statute. The court therefore held: "Under these circumstances, there is no necessity to guess at the statute's meaning in order to determine what conduct it makes criminal."

On this issue the Supreme Court of Pennsylvania said, as to the meaning of the prohibition against performing "any worldly employment or business" on Sunday, in Commonwealth ex rel. Woodruff v. American Baseball Club of Philadelphia, 290 Pa. 136, 138 A. 497, 500, 53 A.L.R. 1027: "On appellant's second proposition, that the act is unconstitutional for uncertainty, we think very little is required to be said. See 37 Cyc. 541; 12 C.J. 1275. It has been on the statute books for 133 years, and has been the subject of much judicial consideration. When its language is given its ordinary, not a strained, construction, its meaning we think is plain. It may be that those who do not wish to understand or abide by its provisions find them uncertain; surely those who wish to follow the custom of our people in Sunday observance do not so find the interdictions of the statute. We can see no basis whatever for the argument that the act violates the Fourteenth Amendment to the federal Constitution." Likewise, the Supreme Court of Iowa, in State v. Linsig, 178 Iowa 484, 159 N.W. 995, 997, said: "The exception provided by the statute is applicable to any and all kinds of labor which are shown to be either necessary or charitable. There is no chance for mistake or misconstruction on the part of any citizen honestly desiring to obey the law. If counsel's contention in this respect be correct, then there can be no effective regulation of labor by a general statute, but there must be distinct and separate enactments for 'the butcher, the baker, and the candlestick maker' and for every one of the endless list of human industries. We cannot commit ourselves to any such holding." (See also dissenting opinion of Chief Justice Vanderbilt in State v. Fair Lawn Service Center, 20 N.J. 468, 120 A.2d 233, 240; as to matters considered in determining "necessity" see Sunday Laws, Ringgold, 232–235.)

Missouri has taken a liberal view in determining "necessity." In Pulitzer Publishing Co. v. McNichols, Mo.Sup., 181 S.W. 1, L.R.A.1916C, 1148, in holding publication of a Sunday newspaper to be a work of necessity, this court said: "In the progress of time and the uplift of man, things which used to be useless or luxurious have become prime necessities. For instance, the railroads, the street cars, the telegraph, and the telephone. All of these have been declared public necessities, and this court, in the case of State v. [Chicago, B. & O. R. Co.] Railroad, 239 Mo. 196, 143 S.W. 785, held that railroads could be compelled, under a legislative enactment, to operate trains on Sunday, and in a number of cases that telephones are public necessities. The press is a greater public necessity than all of them." In view of this ruling and since travel on Sunday has never been prohibited (see exemption of ferrymen in Sec. 563.-700), supplies immediately needed to keep modern traffic moving in motor vehicles or planes surely would now be "articles of immediate necessity," as would supplies immediately needed to carry on any "works of necessity." These views are in accord with the principle that statutes defining crimes are required to be construed liberally in favor of the defendant and strictly against the state. (State v. Chadeayne, Mo. Sup., 323 S.W.2d 680, 685.)

Defendant in support of its "void for vagueness" claim cites the following Law Review notes and articles, which review the authorities: Freund, The Use of Indefinite Terms in Statutes, 30 Yale L.J. 437 (1921); Aigler, Legislation in Vague or General Terms, 21 Mich.L.Rev. 831 (1923); Note, Indefinite Criteria of Definiteness in Statutes, 45 Harv.L.Rev. 160 (1931); Note, Due Process Requirements of Definiteness in Statutes, 62 Harv.L.Rev. 77 (1948); Note, Void for Vagueness: An Escape From Statutory Interpretation, 23 Ind.L.J. 272 (1948); Note, 22 So.Cal.L.

Rev. 298 (1949); Note, The Void for Vagueness Rule in California, 41 Cal.L.Rev. 523 (1953); Note, Requirement of Definiteness in Statutory Standards, 53 Mich.L. Rev. 264 (1954); Collings, Unconstitutional Uncertainty—An Appraisal, 40 Cornell L.Q. 195 (1955); Scott, Constitutional Limitations on Substantive Criminal Law, 29 Rocky Mt.L.Rev. 275, 287ff (1957); Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. of Pa.L.Rev. 67 (1960). These articles consider statutes on other subjects than Sunday laws. However, on the issue of "vagueness," Justice Holmes said in rejecting such a contention concerning a criminal charge under the Sherman Act, in Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 781, 57 L.Ed. 1232, "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure, according to the degree of danger attending it' by common experience in the circumstances known to the actor. 'The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw.'" More recently in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, the court, in overruling the contention that a California obscenity statute violated constitutional requirements of due process by failing to provide reasonably ascertainable standards of guilt, said: "Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '* * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' * * * 'That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *.'" (See United States v. Petrillo, 332 U.S. 1, 67 S. Ct. 1538, 91 L.Ed. 1877, and other cases cited in the Roth case, 77 S.Ct. 1. c. 1313; see also State v. King, Mo.Sup., 303 S.W.2d 930, 934, in which as to claim of uncertainty of Sec. 563.160, making molestation of a minor a crime, we said: "Legislation cannot be nullified on the ground of uncertainty, if it is susceptible of any reasonable construction that will support it." See also State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765.) In some situations, such as understandings in restraint of trade, obscenity, and taking indecent and improper liberties with a minor, meaning can better be stated by providing a general principle for conduct than by undertaking to detail every possible act to be prohibited.

Secs. 563.720 and 563.730 have been the same since 1835, when they were Secs. 31 and 32, Art. VIII, RS 1835, p. 209. Likewise "works of necessity or charity" were exempted in Sec. 28, Art. VIII, RS 1835, p. 209, as now in Sec. 563.690 to which the provisions concerning hunting were later added. The earlier statute (RS 1825, p. 311, Sec. 92) stated that the prohibition of exposure to sale on Sunday "shall not extend to the sale of articles of provision, nor to the sale of any articles of immediate necessity." Thus we have had this exemption of "articles of immediate necessity" for more than 135 years and exemption of "works of necessity" since the territorial act of 1814 (1 Missouri Territorial and State Laws 302). Because of the long history of these provisions, the general understanding of their purpose, and the principles established by the cases for construing them, we cannot say that they are void for vagueness as failing to afford due process of law. We conclude that the term "other articles of immediate necessity" would include other articles as necessary as drugs, medicines or

provisions and that this provides a standard that is not too vague for application. For example, dressings for wounds or splints or casts for broken bones are not drugs or medicines but are certainly of equal necessity; and as we have indicated articles immediately necessary to carry on work of necessity would surely be included. However, in this case, it is not seriously contended that all of the articles shown by the State's evidence to have been sold to the witnesses herein would come within the exemption of "articles of immediate necessity" so we must hold that the State made a case for the jury and that the evidence fully supports the verdict herein.

What we have said really determines defendant's other contentions as to violation of separation of powers provisions and failure to disclose the nature and cause of the accusation. This is true because we have held that the standard provided is not too vague and therefore defendant is given notice of the nature and cause of the accusation against it. Likewise, as shown by the Roth case (77 S.Ct. 1. c. 1313), courts and juries are not legislating in determining the side of the line on which a particular fact situation falls.

■ Defendant makes other contentions concerning voir dire examination, admission of evidence, instructions, form of verdict and the State's argument to the jury. On voir dire, the prosecutor was permitted to question several jurors and receive affirmative answers, over defendant's objections, to such questions as the following: "Now, if I prove to your satisfaction and beyond a reasonable doubt that February 22, 1959, was a Sunday, and that the Katz Drug Company at their 8th and Washington store sold goods, wares and merchandise which were not medicines or drugs and not items of immediate necessity, and if the Court instructs you that that is a violation of the law, will you convict?" This was an improper attempt to commit jurors before they had heard evidence, instructions of the court or argument of counsel. As we

said in State v. Heickert, Mo.Sup., 217 S.W.2d 561, 562: "[C]ounsel has no right on voir dire to cause the prospective jurors to pledge or speculate as to their action in certain contingencies which may later occur or arise during trial. State v. Pinkston, supra [336 Mo. 614, 79 S.W.2d 1046]; State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949. The qualified and selected and instructed juror, having been attentive to the argument of counsel and to the reasoning of his fellows, should be free to reach a conclusion satisfactory to him upon the evidence introduced." In the Heickert case, such an unequivocal pledge of conviction was not asked, and because of the trial court's action therein we considered "the jury could not have understood they had in any way committed themselves," so we held it was not reversible error to refuse to discharge the panel. In that case, the court "did not permit the State's counsel to pursue the inquiry" and admonished the jury not to be influenced by it. In this case, the court did permit the State's counsel to pursue the inquiry, overruling all objections. (Including the following: "There is an improper and incomplete attempt to commit the jurors in advance of hearing any evidence in the case to say whether they are going to convict somebody. I have no objection to asking the jury, will they follow the law; but to try and describe and limit facts and circumstances and improperly limit the law, I object to it.") In State v. Pinkston, 336 Mo. 614, 79 S.W.2d 1046, 1049, we held permitting such voir dire questions reversible error, saying: "The state's attorney had no right to ask the prospective juror what would be his verdict in event certain contingencies should arise." (See also 31 Am.Jur. 123, Jury, Sec. 141; 50 C.J.S. Juries § 275, p. 1042; State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, 694.) The State says that it is not shown that those who were asked this question became jurors. However, the first question appears to have been a general one to the panel and apparently all questions were before the whole panel. Moreover, it was understood

between the court and defendant's counsel that his objection should be understood to apply to subsequent questions and that "the court's ruling will be the same," so no further examination was set out. The State's apparent purpose was to get such a commitment from all prospective jurors and the court's ruling gave permission to do so. We hold that permitting such questions and requiring them to be answered as was done in this case was reversible error.

■ Defendant's claim of error as to evidence is permitting the State's witnesses herein, over its objection, to testify they had no need for the articles purchased by them. Defendant says Sec. 563.720 prohibits exposure to sale and that the charge against it is exposing goods to sale that were not articles of immediate necessity. Therefore, it says while "a sale might legitimately draw into question the needs of the particular purchaser, if it were made a crime to sell to anyone who had no immediate need of an article"; nevertheless "an exposure to sale cannot possibly be related to the lack of need of a particular purchaser, because the exposure takes place even if nothing is sold." So defendant says: "[T]he needs of the community at large are the only needs contemplated by the statute, Section 563.730. Therefore, testimony that a sale was made to X and that he had no need of the article is wholly irrelevant and incurably prejudicial in an exposure-to-sale case." We think defendant is correct in saying this testimony was irrelevant and agree that the standard of "articles of immediate necessity" must be necessity to people generally rather than merely the necessity of a particular individual on a particular occasion. "Works of necessity" perhaps might be related to individual necessity under some circumstances but, as to occupational work, it has been said: "The law regards that as necessary which the common sense of the country, in its ordinary mode of doing its business, regards as necessary." (Gray v. Commonwealth, 171 Ky. 269, 188 S.W. 354, 356, L.R.A.1917B 93, 95; as fact or law issues,

see State v. Schatt, 128 Mo.App. 622, 634, 107 S.W. 10, 13.) Therefore it was error to permit this testimony as to lack of an individual's need for specific articles purchased but, in view of our ruling concerning reversible error in the voir dire examination, it is unnecessary to determine whether or not this error was prejudicial. Since this case must be retried the claim of error in rulings on objections to the oral argument need not be determined and the State will be able to consider defendant's objections to the instructions and form of verdict in connection with the principles herein stated.

The judgment is reversed and the cause remanded.

All concur.